UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LISA ANN HICKS REEVES,<br>    *Plaintiff*,<br><br>v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security<br>Administration,<br>    *Defendant*. | Case No: 1:22-cv-00267<br><br>Judge Christopher H. Steger |

# MEMORANDUM OPINION AND ORDER

## I. Introduction

Plaintiff Lisa Ann Hicks Reeves seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. §§ 401-34. [*See* Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 18].

For the reasons that follow, the Commissioner's Motion for Summary Judgment [Doc. 22] will be **GRANTED** and judgment will be entered **AFFIRMING** the Commissioner's decision.

## II. Procedural History

Plaintiff's disability claim was remanded to Administrative Law Judge Kevin T. Alexander ("ALJ") from the Appeals Council pursuant to a remand from the United States District Court for the Eastern District of Arkansas. (Tr. 1105, 1123). Plaintiff alleges disability since February 19, 2018. (Tr. 1105). The ALJ conducted a telephone hearing (due to the COVID-19 Pandemic) on January 19, 2022, that included Plaintiff's attorney. *Id.* Plaintiff testified at the hearing, as did a

vocational expert ("VE"). (Tr. 1135-1153). The ALJ then rendered his decision on August 4, 2022, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 1123). Plaintiff then filed her Complaint [Doc. 1] on October 24, 2022, seeking judicial review of the Commissioner's final decision under § 405(g).

### III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since February 19, 2018, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

3. The claimant has the following severe impairments: mitral valve prolapse, aortic aneurysm status post repair, hypertension, cervical and lumbar degenerative disc disease, left hip fracture status post repair, major depressive disorder, attention deficit hyperactivity disorder, and adjustment disorder (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertion work as defined in the Dictionary of Occupational Titles (DOT) with these additional restrictions and limits: no temperature extremes of heat or cold exposure; no concentrated fumes, odors, or gas exposure; no climbing of ladders, ropes, or scaffolds; and no lower extremity foot control operation duties required; simple routine repetitive task jobs with supervision that would be simple, direct, and concrete; reasoning level not to exceed 2; and no more than occasional changes to workplace setting required (20 C.F.R. § 404.1567(b)).

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on June 30, 1969, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely

approaching advanced age and continues to be an individual closely approaching advanced age (20 C.F.R. 404.1563).

8. The claimant has at least a high school education (20 C.F.R. 1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Pt. 404, Subpt. P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).

(Tr. at 1108-1123).

### IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to

work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, she is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986). The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky*, 35 F.3d at 1035; *Crisp*, 790 F.2d 450 n.4.

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues [that] are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.   **Analysis**

Plaintiff contends the ALJ erred in determining Plaintiff's Residual Functional Capacity ("RFC") because he: (1) erred in evaluating Plaintiff's subjective complaints; (2) erred in evaluating Plaintiff's non-exertional impairments; and (3) did not present a hypothetical to the VE that properly accounted for Plaintiff's limitations. The Court will address these arguments in turn.

   A.   **Plaintiff's Subjective Complaints**

Plaintiff's specific argument regarding the ALJ's alleged error in evaluating Plaintiff's subjective complaints is somewhat unclear. Though this section of Plaintiff's brief spans ten pages, only three paragraphs[1] seem to offer actual argument. The rest of the section is largely devoted to a selective recounting of the medical record. While the details of the medical record are certainly germane to analyzing Plaintiff's subjective complaints, the Court cannot readily discern what Plaintiff is hoping the Court will do with the highlighted information from the medical record

---

[1] Totaling about one page in length.

without clear argumentation.

Plaintiff's specific allegations found in the three argumentative paragraphs are more straightforward. First, Plaintiff claims that the ALJ erred in assessing Plaintiff's credibility. Plaintiff cites *Schultz v. Astrue*, 479 F.3d 979 (8th Cir. 2007), for the proposition that the ALJ did not fulfill the credibility assessment requirements of *Polanski v. Hecker*, 739 F.2d 1320 (8th Cir. 1984). [Doc. 17 at 9-10]. But "[t]he term 'credibility' is no longer a part of the disability lexicon." *Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *5 (6th Cir. May 26, 2023). Since March 16, 2016, credibility assessments have been replaced by a new framework evaluating "the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities." Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016). The ALJ properly employed the new framework in his opinion. Thus, the ALJ did not err in foregoing the alleged credibility assessment requirements.

Second, Plaintiff complains that, in making his credibility determination,[2] "[t]he ALJ summarized Plaintiff's medical records and discounted Plaintiff's subjective complaints because they were not supported by the objective medical records." Plaintiff then quotes a paragraph from the ALJ's opinion which summarizes a few medical records and states that "there is no objective medical evidence from which to conclude the claimant has required any more than intermittent evaluation and treatment at most." [Doc. 17 at 10 quoting (Tr. 1119)].

However, the quoted paragraph does not support Plaintiff's contention. In the roughly six pages preceding the quoted paragraph, the ALJ spent 21 paragraphs carefully and thoroughly

---

[2] Though the Plaintiff uses the phrase "credibility determination," the Court accepts that the substance of Plaintiff's argument is under the analogous provision of the new framework described in SSR 16-3p and employed by the ALJ—i.e., evaluation of the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's work-related activities.

discussing Plaintiff's alleged disabilities, hearing testimony, and medical record. (*See* Tr. 1113-19). The ALJ exhaustively detailed evidence of Plaintiff's ailments and treatment including cardiac impairments, orthopedic impairments, neurological examinations, pain clinic visits, and mental impairments. *Id.* Only then did the ALJ open the quoted paragraph by stating, "In regard to any other alleged disabling conditions and/or symptoms as alleged by the claimant, there is no objective medical evidence from which to conclude the claimant has required any more than intermittent evaluation and treatment at most." (Tr. 1119). The ALJ then summarized some medical records from conditions that illustrated treatment of such "other disabling conditions."

Plaintiff's brief argument and citation to the quoted paragraph make it seem as though the ALJ was supporting his treatment of *all* of Plaintiff's disabling conditions and symptoms through the quoted paragraph. This would be a troublingly brief and selective discussion of Plaintiff's ailments and treatment. In fact, the ALJ was merely addressing the small number of various conditions and symptoms that fall outside of those impairments meticulously addressed in the 21 preceding paragraphs. The ALJ did discount Plaintiff's subjective complaints based on the objective medical records, but he did so based on a lengthy, thorough, and detailed analysis of Plaintiff's entire medical record.

Thus, the ALJ did not err as alleged in evaluating Plaintiff's subjective complaints. Rather, he properly employed the framework required by SSR 16-3p and his conclusions regarding Plaintiff's subjective complaints are supported by substantial evidence.

B.  **Plaintiff's Non-Exertional Impairments**

Plaintiff claims "[t]he ALJ erred by failing to include Plaintiff's non-exertional limitations in his RFC determination." [Doc. 17 at 13]. Non-exertional limitations are restrictions that affect "your ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a.

Examples include difficulty: (1) functioning due to nervousness, anxiety, or depression; (2) maintaining attention or concentration; (3) understanding or remembering detailed instructions; and (4) seeing or hearing. 20 C.F.R. § 404.1569a(c).

Plaintiff specifically objects to the ALJ's conclusion that Plaintiff could perform light work. *Id.* After citing to specific physical and mental conditions, Plaintiff states that "[t]he documented problems in Plaintiff's neck and back along with her balance problems and fatigue put light work beyond Plaintiff's ability." *Id.* at 14. Plaintiff's argument is simply a disagreement with the level of the ALJ's RFC. There is no question that the evidence in the record could support a more restrictive RFC. But that is not the requisite standard to show error.

Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986). The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky*, 35 F.3d at 1035; *Crisp*, 790 F.2d 450 n.4.

Here, the ALJ extensively discussed Plaintiff's various mental and physical ailments and treatment—including her neck and back problems, balance, and fatigue. (*See* Tr. 1113-21). The ALJ also thoroughly discussed the various medical opinions and how he evaluated them. Plaintiff points to no error of law in how the ALJ arrived at his conclusion, she merely disagrees with the conclusion. However, the Court finds that the ALJ's RFC is reasonable based upon the evidence in the record and his comprehensive analysis thereof.

Therefore, the ALJ did not err in his RFC determination because his conclusion is supported by substantial evidence.

### C. Hypothetical to the VE

Plaintiff claims that the ALJ's hypothetical to the VE "does not include so many of Plaintiff's limitations." [Doc. 17 at 14]. Plaintiff further states that "[a] reasonable mind cannot accept that this Plaintiff could perform light work given the combination of all of her impairments." *Id.* at 15.

Again, Plaintiff's argument is simply a disagreement with the ALJ's conclusion. The ALJ's hypothetical mirrors his RFC. As noted above, the ALJ's RFC is supported by substantial evidence. By extension, his hypothetical to the VE—which mirrors that RFC—is supported by substantial evidence.

### D. Other Arguments

Though not as clearly previewed in her brief as are her other arguments, Plaintiff touches on two other issues. First, Plaintiff complains that the ALJ found three moderate limitations and one mild limitation in analyzing the paragraph B criteria. [*See* Doc. 17 at 15]. Plaintiff claims that her "records, testing, and treating provider's medical opinions show she has marked limitations" in at least three of the broad areas of mental functioning. *Id.*

Plaintiff is once again simply disagreeing with the ALJ's conclusion. The ALJ extensively supported his conclusions with a lengthy and detailed paragraph devoted to each of the four broad areas of functioning. (Tr. 1110-12). His rationale and supporting evidence are sound. Though evidence in the record could support different conclusions, his determinations in the four broad areas are supported by substantial evidence.

Finally, Plaintiff complains that "[t]he ALJ did not order a new mental consultative examination despite records showing Plaintiff is not improving." [Doc. 17 at 16]. Specifically, Plaintiff notes that Plaintiff's disability claim "was remanded to evaluate Plaintiff's mental impairments." *Id.* Thus, "[i]t would have been appropriate to order a mental consultative to perform the tests Benjamin Silber, Ph.D., recommended when he saw Plaintiff in 2020." *Id.*

Plaintiff is certainly correct that the ALJ *could* have ordered such an examination. Plaintiff's case was remanded with several directives to the ALJ. (*See* Tr. 1194-95). Among those directives was that additional evidence "*may* include, if warranted and available, consultative examinations and medical source statements." (Tr. 1194 (emphasis added)). The word "may" constitutes a permissive, not mandatory, directive. Additionally, Plaintiff points to no authority supporting her claim that not ordering an examination to perform the recommended tests was error. Thus, the Court is unconvinced that the ALJ legally *should* have ordered the examination.

Therefore, the ALJ did not err by not ordering a new mental consultative examination.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, the Commissioner's Motion for Summary Judgment [Doc. 22] will be **GRANTED** and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

SO ORDERED.

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE